### STATE v. W. F. NINE, Appellant.

105  131
d112  21
105  131
123  142

**False pretenses:** INDICTMENT. An indictment for obtaining property by false pretenses, which alleged that the note given in payment for the property was represented to be good and of par value, that such representations were false and known to be so, and that the property was received because of them, stated an offense.

IMMATERIAL ALLEGATIONS. In an indictment for obtaining property by false pretenses, an averment that the notes given in payment of the property were "assigned and transferred" does not charge that they were indorsed; and allegations that defendant falsely represented the financial worth of the assignor, and thereby obtained credit, thus assuming the assignor, to be an indorser, are immaterial. As it was not charged that the notes were indorsed, the financial standing of one asserted to have indorsed them cannot be material.

*Submission of.* Where an indictment charged several false representations, any one of which, if material, might have been the basis of a conviction, it was erroneous to submit to the jury such representations as were immaterial.

**Appeal:** OBJECTION BELOW: *Criminal law.* Where a trial was had on an indictment alleging facts which were immaterial, and the jury was instructed to consider such facts, the case will be reviewed, although no objection to the testimony was made in the court below.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FRIDAY, APRIL 8, 1898.

INDICTMENT for obtaining property by false pretenses. Verdict of guilty, and a judgment thereon, from which the defendant appealed.—*Reversed.*

*Dale, Kinkead & Bissell* for appellant.

*Milton Remley,* attorney general, and *Jesse A. Miller* for the state.

GRANGER, J.—The indictment is against defendant, Nine, and one John Stewart, but the trial was alone as to Nine. The property charged to have been obtained by false pretenses was boots, shoes, and other property, of the value of eight hundred dollars, belonging to one Joseph Lawson. For such property Lawson received two notes, one for five hundred dollars and one for three hundred dollars, payable to the order of John Stewart, and signed by Walter Brinkerhoff, which notes were to be secured by a mortgage on certain described land in the state of Missouri. These facts appear in the indictment, and the following is a statement of the false pretenses employed: "Which said notes W. F. Nine and John Stewart represented and agreed the said John Stewart, in the event they traded or sold said notes to the said Joseph Lawson, would

indorse; and that he, the said John Stewart, would assign and transfer said notes and each of the said notes to the said Joseph Lawson; and the said W. F. Nine and John Stewart did then and there state, declare, and represent to the said Joseph Lawson that said notes were valuable and good, and the reasonable aggregate market value of said notes was eight hundred dollars of lawful money of the United States; that the said John Stewart was then and there the lawful owner and possessor of said notes; that the said John Stewart was then and there the owner and possessor of much other valuable property, personal and real; that the said John Stewart was then and there the owner of two farms, one of one hundred and twenty acres of valuable land, and the other one hundred and sixty acres of valuable land, both located in Guthrie county, Iowa, and of a certain house and lot in the vicinity of Twentieth and Clark streets, in the city of Des Moines, Iowa, of the reasonable market value of six thousand dollars, a more particular description and designation of said real estate being to this grand jury at this time unknown." These averments are followed by statements of the belief and good faith of Lawson; that he relied on the representations, and delivered the boots, shoes, and other property to Nine and Stewart. It is then averred that the representations were false, and known to be so.

It is thought that the indictment is fatally defective because it fails to allege that the notes were indorsed by Stewart. If the fact of Stewart's indorsement is not to be understood from the averments of the indictment, it is not thought by counsel for the state that the representations as to the property owned by Stewart are material; at least, there is no such contention, and there seems no room to doubt such a conclusion. The endorsement was essential to a personal obligation of Stewart on the note, and, if the note was taken without such liability, it could not well be said

that such representations defrauded Lawson, for his position would be the same whether the representations were true or false. But it is said by appellee that the indictment is good, even though the representations as to Stewart's property be disregarded, and in this we think appellee is right. One of the false representations charged is that the notes were good, and of the aggregate value of $800. If such representations were false, and known to be so, and property was obtained because of them, which, for this purpose, we assume, because it is so charged, then the indictment states an offense.

It is thought, however, by appellee, that the indictment does, in legal effect, charge that the notes were indorsed. It will be seen that it charges that Nine and Stewart agreed, in the event of the trade, that the said John Stewart "would indorse, and that he, the said John Stewart, would assign and transfer, said notes, and each of said notes, to the said Joseph Lawson." That is simply the averment as to the agreement in the event of a trade. In averring what was done it merely appears that the notes were "assigned and transferred by the said John Stewart to the said Joseph Lawson." It is not in terms said that they were indorsed, but appellee insists that the words "assigned and transferred" are legally equivalent to an averment that they were indorsed. To sustain such a claim, we must, in effect, hold that the only legal method of assigning and transferring such a note is by endorsement, so that the terms will be equivalent in meaning. If the notes could be assigned and transferred by other methods, then such an averment might and might not mean a transfer by indorsement. The term "assigned and transferred," without modifying or restrictive language, would include any legal method of so doing. In *Ruby v. Culbertson*, 35 Iowa, 264, we held that the possession

of such a note was *prima facie* evidence of plaintiff's ownership, and that it need not be proven by written assignment. In *Pearson v. Cummings*, 28 Iowa, 344, treating of such a note, it is said: "Although the note had not been indorsed to the plaintiff, yet, if she was the real owner thereof, she might bring suit in her own name, being the real party in interest." In *Franklin v. Twogood*, 18 Iowa, 515, after speaking of different methods of assignment, in regard to such a note, it is said: "If there be an assignment thereof, without indorsement, the holder will thereby acquire the same right only as he would acquire upon an assignment of a note not negotiable." See, also, *Younker v. Martin*, 18 Iowa, 143. It seems to us quite conclusive that the language of the indictment should not be construed as charging that the notes were indorsed by Stewart. These conclusions render the averments of the indictment as to false representations in regard to the property of Stewart mere surplusage.

II. The court by its instructions permitted the jury to consider three representations charged as false: *First,* that as to the ownership of the farms in Guthrie county; *second,* that as to the ownership of the house and lot in the vicinity of Twentieth and Clark streets, and, *third,* that in regard to the notes being good and valuable. These were distinct representations and either might have been, if sustained by the proofs, the basis of a verdict for the state. With our conclusion as to the first two representations, it follows that they should have been disregarded, and the instruction permitting their consideration is erroneous. It is said that the case was tried on the theory that the indictment did charge that the notes were indorsed, and the evidence to show that fact was admitted without objection. The claim, as to the admission of evidence, seems to be true, and, were it not that the instructions

permitted the jury to consider issues of fact not presented by the indictment and plea, a different question might be before us; that is, had this immaterial testimony been so admitted as to be limited, in its effect, to the issue joined, without objection, a different ruling might follow. As to that we do not determine. With an instruction presenting a question of fact not involved we have a different question. The rule that objections not raised in the court below will not be considered in this court does not apply in criminal cases, State v. Potter, 28 Iowa, 554; State v. Daniels, 90 Iowa, 491. See, also, State v. Lundermilk, 50 Iowa, 695, and State v. Barlow, 50 Iowa, 701. It seems to us clear, that to permit the jury to convict on an issue of fact not involved, as is the case with instruction No. 4 of those given by the court, is prejudicial error, for which the judgment must be REVERSED.