371 F.2d 726
 Johnny D. SALAZAR, Appellant,
v.
Felix RODRIGUEZ, Acting Warden, New Mexico State Penitentiary, Appellee.
Joe M. LUCERO, Appellant,
v.
Felix RODRIGUEZ, Acting Warden, New Mexico State Penitentiary, Appellee.
 No. 9052.
 No. 9053.
 United States Court of Appeals Tenth Circuit.
 January 19, 1967.
 
 Ruben Rodriguez, Santa Fe, N. M., for appellant Salazar.
 Melvin T. Yost, Santa Fe, N. M., for appellant Lucero.
 L. D. Harris, Sp. Asst. Atty. Gen., Albuquerque, N. M. (Boston E. Witt, Atty. Gen., Santa Fe, N. M., with him on the brief), for appellee.
 Before PICKETT and SETH, Circuit Judges, and BROWN, District Judge.
 PICKETT, Circuit Judge.
 
 
 1
 The appellants, Salazar and Lucero, are serving in the New Mexico State Penitentiary, sentences of three years to life, which followed their pleas of guilty to murder in the second degree. These appeals are from orders denying petitions for habeas corpus filed in the United States District Court for the District of New Mexico. They present identical questions and have been consolidated for disposition.
 
 
 2
 On February 9, 1963, Salazar and Lucero, then aged 17 and 16, respectively, were taken into custody by the Albuquerque, New Mexico police, as suspects of the crime of murder. They were held and questioned by police officers and juvenile authorities. On February 11, petitions charging them with murder were filed pursuant to the New Mexico Juvenile Code. New Mexico Stat. 1953, 13-8-1 et seq, as amended. On February 18, Salazar and Lucero were brought before the juvenile court, which, without a formal hearing, relinquished its jurisdiction and ordered them bound over to the district court for disposition as in other criminal cases. The order recited that it was made after "a full investigation", and "that it would be contrary to the best interests of the public to retain jurisdiction."[1] Salazar and Lucero were not represented by an attorney while they were held for questioning by juvenile authorities, nor were they represented when the juvenile court waived jurisdiction.
 
 
 3
 On February 20, a criminal complaint was filed charging the appellants with murder, and competent counsel was appointed to represent each of them. No objection was made in the district court to the waiver of jurisdiction by the juvenile court. An exhaustive preliminary hearing was thereafter held, and on March 29 an information was filed charging them with first degree murder. On October 24, 1963 Salazar and Lucero appeared in the Bernalillo County District Court with their attorneys and entered pleas of guilty to second degree murder and were duly sentenced on the pleas.[2]
 
 
 4
 In this habeas corpus proceeding no question is raised as to the competency and adequacy of the representation by appointed counsel in the state district court, nor is it contended that the pleas of guilty to second degree murder were not intelligently and voluntarily made. The attack is upon the validity of the juvenile court proceedings, including the waiver of its jurisdiction. It is argued that the record does not reflect a factual or legal basis for the holding of the Supreme Court of New Mexico that the proceedings in juvenile court, including the waiver of jurisdiction, were valid. In short, it is said that the juvenile court never relinquished jurisdiction, that the jurisdiction of the state district court never attached, and that consequently, all proceedings therein were void. Appellants rely upon Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, in which the Supreme Court of the United States, considering District of Columbia statutes similar to the New Mexico Juvenile Code, held that a like order waiving jurisdiction was invalid. In that case, however, the juvenile resisted a waiver of jurisdiction by the District of Columbia Juvenile Court, moved for a hearing, and appealed from the order. He also instituted habeas corpus proceedings in the United States District Court for the District of Columbia, challenging the validity of the waiver order, and finally, appealed from his conviction. In the case at bar there was no objection to the orders until approximately two years after entry of the pleas of guilty and while the appellants were serving their sentences. The Supreme Court of New Mexico, in a habeas corpus action, upheld the juvenile court proceedings and jurisdiction of the district court to proceed.
 
 
 5
 We have on numerous occasions held that federal courts are bound by the state's interpretation of its own statutes. Pearce v. Cox, 10 Cir., 354 F.2d 884; Silva v. Cox, 10 Cir., 351 F. 2d 61, cert. denied 383 U.S. 919, 86 S.Ct. 915, 15 L.Ed.2d 673; Gantar v. Cox, 10 Cir., 351 F.2d 65. We have also held repeatedly that a voluntary plea of guilty waives prior procedural defects and constitutional infirmities. Gallegos v. Cox, 10 Cir., 358 F.2d 703; Pearce v. Cox, supra; Silva v. Cox, supra; Gantar v. Cox, supra. We do not reach the constitutional right of a juvenile to be represented by an attorney in juvenile proceedings or the admissibility into evidence of admissions or confessions made without constitutional protection. On habeas corpus petitions by state prisoners, we are concerned only with basic constitutional questions. Whether a juvenile under New Mexico law is entitled to a remand from the state district court to the juvenile court because of defects in the waiver of jurisdiction presents a procedural question ordinarily to be determined by the New Mexico courts.
 
 
 6
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 New Mexico Stat.1953, 13-8-27, as amended, provides in part:
 "* * * that if any child fourteen [14] years of age or older is charged in juvenile court with an offense which would be a felony if committed by an adult, and if the court after full investigation deems it contrary to the best interests of such child or of the public to retain jurisdiction, the court may in its discretion certify such child for proper criminal proceedings to any court which would have trial jurisdiction of such offense if committed by an adult; but no child under fourteen [14] years of age shall be so certified."
 
 
 [2]
 As to his plea of guilty to second degree murder Salazer testified:
 "Q. * * * (W)hen do you recall your attorneys being appointed? Now, the same attorneys represented you, as represented Mr. Lucero? A. Yes, sir.
 Q. And you all were handled together at the same time, and the proceedings involved both of you, did they not? A. Yes, sir.
 Q. And the Preliminary Hearing was directed toward both of you? A. Yes, sir.
 Q. You were both present and both represented by the same attorneys? A. Yes, sir.
 Q. And after the Preliminary Hearing, your attorneys filed Motions to Suppress certain evidence, the same as they did in Mr. Lucero's behalf, they did that on your behalf, didn't they? A. Yes, sir.
 Q. In District Court? A. Yes, sir.
 Q. And that Motion was also denied? A. Yes, sir.
 Q. And subsequent to that, then, you discussed the case, the evidence and the facts with your attorneys, about your involvement in this crime? A. Yes, sir.
 Q. And you decided, and they decided and recommended that you plead guilty to second degree murder? A. Yes, sir.
 Q. And at the time you pled, you knew what the sentence could be, that you could be sent to the Penitentiary? A. Yes, sir.
 Q. When you pled guilty? And you knew that it would be for not less than three years, I believe? A. Not less than three, and not more than life.
 Q. Not more than life, that was your understanding at the time you pled guilty?
 A. Yes, sir.
 Q. Did you understand, also, Mr. Salazar, that if you did not plead guilty, that you could have had a trial with a jury? A. Yes, sir.
 Q. And that the same attorneys would have represented you at that trial? A. Yes, sir."
 Lucero's testimony was substantially the same.